James v. Hagar.

HENRY JAMES v. FREDERICK L. HAGAR and HENRY RAHARGE.

A written agreement to pay money provided the payee shall do a certain thing, is not negotiable paper, and is subject, in the hands of a third person, to all defences valid against it in the hands of the original payee.

A mariner, who is in a vessel when she commences her voyage, but who leaves her while she is temporarily stayed in the harbor by accident, head winds or other causes, before she reaches the main ocean, has not "proceeded to sea," in the sense in which that term is to be understood in an agreement for the payment of money upon that condition.

Where it was agreed that money should be paid to a seaman as soon as he should proceed to sea agreeably to the shipping articles, and the ship started, but before leaving the harbor, was compelled by accident to return,—*Held*, in the absence of proof of the contents of the shipping articles, that the condition of the agreement was unfulfilled, and there could be no recovery on it.

APPEAL by the defendant from the judgment of the First District Court.

The action was brought upon an instrument described in the complaint as a promissory note of the following form.

"New York, July 23, 1864.

"We promise to pay to Lansing Fogarty, or order, the sum "of twenty dollars, provided he proceed to sea in the schooner "Mary S. Tibbitts, agreeable to the shipping articles he has "signed, as cook.        HAGAR & Co.,
"$20.00.                                56 West St."

—which was endorsed over to the plaintiff.

The plaintiff's assignor, Fogarty, shipped as cook on board the schooner, and went on board the 23d of July, remaining fourteen or fifteen days, his pay to commence from July 23d. He testified that he was to receive twenty-five dollars advance, and got five dollars, and the above note, which he sold for eighteen dollars to the plaintiff. The schooner started, but when opposite Governor's Island collided with another vessel and returned to Jersey City to be repaired. Shortly after, Fogarty was taken sick, and left the schooner in consequence, not making the voyage in her. The testimony of the master and mate of the schooner, taken on commission, was read, but the shipping articles were not produced.

One of the defendants testified that they were shipping mas-

ters. That Fogarty did not proceed to sea according to the shipping articles; and that the custom of this port is to pay the money on these due bills as soon as the vessel proceeds to sea, that is, as soon as the pilot leaves the vessel in case she is a seagoing vessel, and after she has been out three days, in the case of a coasting vessel.

The judge rendered judgment for the plaintiff for twenty-five dollars, from which the defendants appealed.

*R. P. Lee*, for the appellants.

*John Lanktree*, for the respondent.

BY THE COURT.—DALY, F. J.—The defendants are shipping masters, whose business it is to procure seamen for vessels. They procured Fogarty, the plaintiff's assignor, to go in the schooner as cook, with the understanding that twenty-five dollars of his wages was to be paid in advance. Fogarty signed the shipping articles, and the defendants paid him five dollars in cash and gave him an agreement in writing by which they bound themselves to pay to him or to his order the remaining twenty dollars, provided he should proceed " to sea, agreeable to the shipping articles," which agreement Fogarty transferred to the plaintiff. Though payable to order it was not in the nature of a promissory note or due bill, as the promise to pay was conditional and not absolute, depending upon an event which might never happen. The plaintiff, therefore, acquired no other or greater rights under it than Fogarty possessed, so that if Fogarty could not recover upon it, the plaintiff could not.

The vessel it would seem was bound to Fortress Monroe. She left the wharf at New York, Fogarty being then on board, to proceed on her voyage, but in going down the bay came in collision with another vessel, which made it necessary for her to put back for repairs to Jersey City, and which involved a delay of several days before she could resume her voyage. During this detention Fogarty left the vessel without the knowledge of the master or of the mate, and another cook had to be shipped in his place. He testified that he had been taken sick, and that the vessel had not proper sleeping accommodation for him, the substance of his testimony being that he

James v. Hagar.

had been prevented by illness from performing his contract, and if such were the case, he, of course, had no claim for compensation under it.

The defendants' promise to pay depended upon the fulfilment of the condition expressed, and it was therefore incumbent upon the plaintiff to show that Fogarty did proceed to sea agreeable to the shipping articles. To do this it was necessary to show what was contained upon that subject in the shipping articles, either by the production of the articles or by the proof of their contents. At the time of the trial they were in the possession of the captain, who was at sea; but as both he and the mate had been examined as witnesses, *de bene esse*, it was in the plaintiff's power to have produced this necessary evidence. This objection was taken by the defendants. They insisted that the complaint should be dismissed unless the plaintiff produced the shipping articles or gave some evidence of their contents, but the justice upon the facts above stated, gave judgment for the plaintiff.

In the absence of any evidence of what was contained in the shipping articles, the justice could not find that Fogarty did proceed to sea agreeably to their provision, and if they contained what is usual in such instruments, it is manifest that he did not. The vessel, within the meaning of a contract of insurance, or agreements of a like character, was at sea when the collision occurred, having actually commenced her voyage (*The Union Insurance Co. v. Tysen*, 3 Hill, 118); but a mariner in a vessel when she thus commences her voyage but who leaves her while she is temporarily stayed in the harbor by accidents, head winds or other causes before she reaches the main ocean, has not proceeded to sea in the sense in which that term is to be understood in such agreement, and it would be as absurd as it would be unjust to say that Fogarty, who quitted the vessel in the harbor, proceeded to sea in her because he was on board when she commenced her voyage.

The plaintiff testified that he *understood* that Fogarty proceeded to sea according to the custom of the port. He does not state what the custom was, or from whom or from what this understanding was derived. It was simply giving his understanding or conclusion, without disclosing upon what it was founded. The defendant, Hagar, on the contrary, testified

that the custom of this port was to pay the money upon agreements of this kind as soon as the vessel proceeded to sea, that is, as soon as the pilot leaves, if it is a seagoing vessel, and if a coasting vessel after she is out three days. This was clear and intelligible. It was a statement of what the custom was, which the other was not, and was uncontradicted. It showed the existence of a custom which was in itself reasonable, in respect to which the parties may be presumed to have contracted, and should have been controlling.

The judgment should be reversed.